IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

JOHN LEE JOHNSON, )
)
    Plaintiff, )
)
v. ) Case No. 17-CV-0418-TCK-FHM
)
OK-DOC BOARD OF CORRECTIONS; )
MICHAEL ROACH, Chairman of )
the Oklahoma Department of )
Corrections Board of Corrections, )
)
)
    Defendants.[1] )

**OPINION AND ORDER**

This is a civil rights action. Before the Court is Defendants' motion for summary judgment (Dkt. 37). Plaintiff John Lee Johnson filed a response in opposition to the motion (Dkt. 40). For the reasons discussed below, the Court grants Defendants' motion.

*BACKGROUND*

In 1997, a jury convicted Johnson, in the District Court of Tulsa County, Case No. CF-97-3991, of four counts of sexual battery, two counts of rape by instrumentation, two counts of forcible sodomy, and two counts of kidnapping. Dkt. 21-1, at 2. The trial court adopted the jury's sentencing recommendations, imposed a 1,000-year prison sentence for each conviction, and ordered the sentences to be served consecutively. *Id.*; Dkt. 11, at 2, 4. Johnson is eligible to be considered for parole. Dkt. 40, at 14; Dkt. 37, at 8. Johnson receives monthly income from the

---

[1] For reasons more fully explained in the body of this opinion, *see infra* pp. 3-5, the Court adds Michael Roach, Chairman of the Oklahoma Department of Corrections Board of Corrections, as a defendant pursuant to Fed. R. Civ. P. 21. The Clerk of Court is directed to update the record to reflect the addition of Roach as party defendant. Because Plaintiff seeks prospective injunctive relief from Roach only in his official capacity as the Board's chairman, the Court construes the Board's motion for summary judgment as filed on behalf of both defendants.

Oklahoma Department of Corrections (ODOC), either through work assignments or incentive pay, and from "wages earned through private employment." Dkt. 40, at 15-16. In accordance with OKLA. STAT. tit. 57, § 549(A)(5) and ODOC policy OP-120230(I)(A)(2), the ODOC deposits 20% of Johnson's monthly income into a mandatory savings account. Dkt. 21-2, at 3; Dkt. 37, at 3; Dkt. 40, at 14-16. Funds from Johnson's savings account are payable to him "upon normal discharge." Dkt. 21-2, at 3; OKLA. STAT. tit. 57, § 549(A)(5). As amended in 2014, OKLA. STAT. tit. 57, § 549(A)(5) provides an exemption from the mandatory-savings rule for inmates who are serving sentences of life without the possibility of parole (LWOP). Dkt. 11, at 4; Dkt. 21-2, at 3; Dkt. 37, at 3.

Johnson commenced this action in July 2017, by filing a 42 U.S.C. § 1983 civil rights complaint (Dkt. 1). He filed an amended complaint (Dkt. 11) in November 2017. Johnson claims Defendants' enforcement of OKLA. STAT. tit. 57, § 549(A)(5) violates his Fourteenth Amendment right to equal protection because the statute exempts inmates serving sentences of LWOP from the mandatory-savings rule but does not also exempt inmates like Johnson who are serving lengthy term-of-years sentences and "have no realistic chance for parole." Dkt. 11, at 4-5. Johnson contends there is "no logical or sensible justification for this disparity." *Id.* at 5.

Defendants filed a motion for summary judgment (Dkt. 37) on April 15, 2019. Johnson filed a timely response in opposition to the motion (Dkt. 40) on May 24, 2019.

## *DISCUSSION*

Defendants style their motion as one seeking summary judgment under Fed. R. Civ. P. 56(a). Dkt. 37. However, within the summary judgment motion, Defendants also urge the Court to dismiss Johnson's equal-protection claim. *Id.* at 4-6. The Court rejects Defendants' arguments for dismissal, but agrees with Defendants that they are entitled to judgment as a matter of law.

I.     **Dismissal**

Defendants seek dismissal of Johnson's equal-protection claim on two grounds. First, they argue that the ODOC, as an arm of the State, is entitled to Eleventh Amendment immunity. Dkt. 37, at 4-5. Second, they argue that *Heck v. Humphrey*, 512 U.S. 477 (1994), bars Johnson's claim. *Id.* at 5-6. Neither argument is persuasive.

A.     **Eleventh Amendment immunity**

Defendants first question this Court's subject-matter jurisdiction and contend that "all claims made by [Johnson] should be dismissed in their entirety" because Johnson sued the ODOC and the ODOC is an arm of the State protected by Eleventh Amendment immunity. Dkt. 37, at 4-5. In asserting Eleventh Amendment immunity, Defendants dispute Johnson's contention that *Ex parte Young*, 323 U.S. 670 (1944), permits Johnson to proceed with his claim. *Id.* at 5; Dkt. 40, at 7-9. Specifically, Defendants argue that *Ex parte Young* does not apply because Johnson did not sue any state officials, other than Governor Fallin who was previously dismissed as a defendant. Dkt. 37, at 5.

The Eleventh Amendment generally bars "suits in federal court against a state by its own citizens or by citizens of another state." *Eastwood v. Dep't of Corr.*, 845 F.2d 627, 631 (10th Cir. 1988); U.S. Const. amend. XI. And, as an arm of the State, the ODOC is protected by Eleventh Amendment immunity. *Eastwood*, 846 F.2d at 631. But, for two reasons, the Court finds the Eleventh Amendment does not bar Johnson's equal-protection claim. First, Johnson did not sue the ODOC. Rather, in his amended complaint, he sued Governor Mary Fallin and the ODOC's Board of Corrections. Dkt. 11, at 1. By order filed January 16, 2018, the Court dismissed Governor Fallin as a defendant, finding Johnson's claim against her was barred by the Eleventh Amendment. Dkt. 13, at 4-8. In doing so, the Court explained that, under *Ex parte Young*, the

proper defendant would be a state official with "some connection" to enforcement of OKLA. STAT. tit. 57, § 549(A)(5). *Id.* at 6-7 (quoting *Ex parte Young*, 209 U.S. at 157). The Court found that the Board has a duty to enforce that statute, concluded that Johnson could proceed with his claim against the Board, and directed Johnson to submit service documents. Dkt. 13, at 7-8. As directed, Johnson submitted a summons and a U.S. Marshal service form and, on both forms, he identified Michael Roach, the Board's chairman, as the defendant to be served. Dkts. 15, 16. Roach was served on February 15, 2018, *see* Dkt. 16, and, on March 5, 2018, the Board's former counsel, an Assistant Attorney General with the Oklahoma Attorney General's Office, entered his appearance as counsel "for Defendant: Michael Roach." Dkt. 17. That same day, the Assistant Attorney General filed a motion requesting a stay, requesting an order directing the ODOC to file a special report, and identifying himself as Roach's attorney. Dkt. 18, at 3. Thus, contrary to Defendants' position, Johnson brought his suit for prospective injunctive relief against an appropriate state official, *see* Dkt. 37, at 5, and *Ex parte Young* applies. *See Ex parte Young*, 209 U.S. at 157; *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012).

Second, Johnson's failure to identify Roach as a defendant in his amended complaint does not bar application of *Ex parte Young*. Because Plaintiff appears pro se, the Court must liberally construe his pleadings. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (1991). And, "in a pro se case when the plaintiff names the wrong defendant in the caption or when the identity of the defendants is unclear from the caption, courts may look to the body of the complaint to determine who the intended and proper defendants are." *Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243-44 (10th Cir. 2007). Here, while Johnson did not specifically name Michael Roach as a defendant in either the caption or the body of his amended complaint, he did identify the Board as a defendant and he made clear that he was seeking prospective injunctive relief. Moreover, he corrected his failure to

4

name one or more specific members of the Board when he submitted service documents identifying Roach as the defendant. Given the procedural history of this case, the Court finds it reasonable to construe Johnson's pro se pleadings, along with the service documents, as Johnson's attempt to bring his claim against a state official with "some connection" to enforcement of the statute he challenges. *Ex parte Young*, 209 U.S. at 157. Furthermore, the Federal Rules of Civil Procedure expressly provide that "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21; *see also Travelers Indem. Co. v. U.S. of Am. for Use of Constr. Specialties Co.*, 382 F.2d 103, 105-06 (10th Cir. 1967) (discussing "amendments which involve the adding of parties" and reasoning that the purpose of the Federal Rules of Civil Procedure is not "furthered by denying the addition of a party who has a close identity of interest with the old party when the added party will not be prejudiced"). Here, the Court finds that Roach, who is sued in his official capacity as the Board's chairman and who was served with a copy of the amended complaint, will not be prejudiced by the Court's decision to add him as a defendant pursuant to Fed. R. Civ. P. 21. *See Thompson v. Colorado*, 60 F. App'x 212, 216 n.1 (10th Cir. 2003) (unpublished)[2] (noting that "[r]esort to Rule 21 is appropriate where . . . 'requiring dismissal after years of litigation would impose unnecessary and wasteful burdens on the parties, judges, and other litigants waiting for judicial attention.'" (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 836 (1989))).

For these reasons, the Court rejects Defendants' argument that the Eleventh Amendment

---

[2] The Court cites this decision, and other unpublished decisions herein, as persuasive authority. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

bars Johnson's equal-protection claim.[3]

B. *Heck v. Humphrey*

Next, Defendants contend that Johnson's "claims regarding his access to his mandatory savings account are a challenge to the validity of his sentence and are barred by *Heck v. Humphrey*," 512 U.S. 477 (1994). Dkt. 37, at 5-6. The Court agrees with Johnson that *Heck* poses no bar. Dkt. 40, at 9-11.

*Heck* requires dismissal of a § 1983 claim for damages when a judgment in the plaintiff's favor "would necessarily imply the invalidity of his conviction or sentence . . . unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487. In support of their *Heck* argument, Defendants cite *Hyde v. Hawk*, 201 F.3d 448, 1999 WL 1079607 (10th Cir. 1999) (unpublished), a decision that is readily distinguishable on its facts. Defendants describe the case as follows,

> In *Hyde*, the federal prisoner challenged the district court's failure to set a schedule in his criminal judgment and sentence for payment of restitution, assessments and costs. The prisoner contended the failure of the court to set the payment schedule was an improper delegation of judicial duty. The Tenth Circuit held that "Plaintiff's allegations necessarily imply that his sentence is invalid." Because the prisoner could not demonstrate his sentence had already been invalidated, his claim was barred by *Heck*.

Dkt. 37, at 6 (internal citations omitted) (citing and quoting *Hyde*, 1999 WL 1079607, at *2).

---

[3] In seeking dismissal, Defendants also suggest that Johnson asserts multiple "claims" and "seek[s] monetary relief." Dkt. 37, at 5. As the Court understands the amended complaint, Johnson brings one claim—his equal-protection claim—and seeks two forms of relief: (1) prospective injunctive relief, in the form of having the LWOP exemption applied to him in the future and, if he prevails on his claim, (2) recovery of the $400 he paid to bring this action. Dkt. 11, at 3; *see also* Dkt. 13, at 7-8 (discussing nature of Johnson's equal-protection claim); Dkt. 13, at 3-4 (discussing nature of Johnson's claim and his request for injunctive relief and costs). To the extent Defendants suggest there are other "claims" or "claims seeking monetary relief" (other than the costs of this action) presented in the amended complaint, the Court finds no support in the record for that suggestion.

Defendants then boldly assert, "The result is the same here." *Id.*

Notably absent from Defendants' argument, however, is any logical explanation of how Johnson's claim that the Board's enforcement of a statutory exemption for inmates sentenced to LWOP violates his right to equal protection equates to, or even remotely resembles, the federal prisoner's claim in *Hyde* that the federal district court erred in imposing his sentence by improperly delegating part of its sentencing authority to prison officials. Instead, the Defendants' only explanation for their *Heck* argument makes little sense: "Plaintiff is essentially challenging the validity of his sentences as he claims they are 'tantamount to a sentence of LWOP.'" Dkt. 37, at 6 (quoting Dkt. 11, at 4). Even without the benefit of liberal construction, it is evident from Johnson's amended complaint that he compares his sentences to a sentence of LWOP to support his argument that he is similarly situated with, but treated differently than, the inmates who benefit from the statutory exemption. Dkt. 11, at 2-5. He does not, as Defendants appear to argue, claim that the state district court erred in imposing ten consecutive 1,000-year prison terms rather than sentencing him to LWOP. *Id.*; *see also* Dkt. 40, at 14 (rebutting Defendants' argument that he is "seeking . . . the paradox of a 'reduced' sentence to LWOP").

In short, Defendants' attempt to contort Johnson's equal-protection claim into one that challenges the validity of his sentences wholly mischaracterizes that claim and offers no support for Defendants' argument that *Heck* bars his claim.

**II.  Summary judgment**

Defendants contend they are entitled to summary judgment, under Fed. R. Civ. P. 56(a), because Johnson has not shown either (1) that he is being treated differently than similarly situated inmates or, (2) even if he is, that there is no rational basis for exempting from the mandatory-savings rule only those inmates who are serving sentences of LWOP. *Id.* at 6-9.

7

Johnson urges this Court to deny Defendants' request for summary judgment because there is a "real dispute" as to whether he is similarly situated with inmates serving sentences of LWOP given that he will not likely "discharge" his sentences within his lifetime. Dkt. 40, at 5-6. He contends this "real dispute" precludes summary judgment because it "is one that would seemingly require submission to a jury." *Id.* at 6. Johnson also questions whether it is rational for the State to provide an exemption from the mandatory-savings rule only for inmates serving sentences of LWOP when, in some cases, even those inmates have a remote chance of being released. *Id.* at 12; Dkt. 11, at 5.

A. **Summary judgment standard**

Summary judgment is appropriate if the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant bears the burden to show that there are no genuine issues for the jury to resolve and that the movant is entitled to judgment as a matter of law. *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1236 (10th Cir. 2009) (Holmes, J., concurring).

A "dispute about a material fact is 'genuine' when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material when it "might affect the outcome of the suit under the governing [substantive] law." *Id.* But "there can be 'no genuine issue as to any material fact'" if the party who bears the burden of proof at trial "fails to make a showing sufficient to establish the existence of an element essential to that parties' case" because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

At the summary-judgment stage, the court's task "is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson*, 477 U.S. at 249). And, in applying the summary-judgment standard, the court "view[s] the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party." *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1315 (10th Cir. 2017) (quoting *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 997 (10th Cir. 2011)).

B.     **Analysis**

Johnson's equal-protection claim is straightforward. Johnson claims that Defendants' enforcement of OKLA. STAT. tit. 57, § 549(A)(5), as amended in 2014, violates his Fourteenth Amendment right to equal protection because the statute exempts inmates serving sentences of LWOP from contributing to a mandatory savings account but does not also exempt inmates serving lengthy term-of-years sentences who are eligible for parole but who are unlikely to be released on parole during their lifetimes. Dkt. 11, at 2-5; Dkt. 40, at 5-6, 13-14.

"The Fourteenth Amendment guarantee of equal protection 'is essentially a direction that all persons similarly situated should be treated alike.'" *Straley v. Utah Bd. of Pardons*, 582 F.3d 1208, 1215 (10th Cir. 2009) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). But "[t]he Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons *who are in all relevant respects alike*." *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 54 (10th Cir. 2013) (emphasis in original) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). Even if a "challenged state action intentionally discriminates between similarly situated groups of persons," that action does not violate the Equal Protection Clause if it "can be justified by reference to some upright government

purpose." *SECSYS, LLC v. Vigil*, 666 F.3d 678, 685-86 (10th Cir. 2012). And "[u]nless a legislative classification burdens a fundamental right or targets a suspect class, courts will uphold it if it is rationally related to a legitimate end." *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998).[4]

Thus, to prevail on his equal-protection claim, Johnson must show (1) that he is similarly situated with inmates serving sentences of LWOP and (2) that there is no rational basis for exempting only inmates serving sentences of LWOP from the mandatory-savings rule.

"Inevitably, the degree to which others are viewed as similarly situated depends substantially on the facts and context of the case." *Jennings v. City of Stillwater*, 383 F.3d 1199, 1214 (10th Cir. 2004). Here, viewing the facts, and reasonable inferences drawn therefrom, in Johnson's favor, a rational factfinder could find that Johnson is similarly situated with an inmate who is serving a sentence of LWOP. It is undisputed that Johnson, who will be 69 years old this year, is currently serving ten 1,000-year sentences which must be served consecutively. Dkt. 37, at 3; Dkt. 40, at 13. It is also undisputed that Johnson is eligible for parole. Dkt. 37, at 8; Dkt. 40, at 13-14. But Johnson asserts, and Defendants' do not appear to dispute, (1) that he has twice been denied parole from his first sentence, (2) that even if he were immediately paroled to his second sentence he would be required to serve 15 years before he could be considered for parole from that sentence, and (3) that the same 15-year requirement would apply with equal force as to each of his remaining sentences. Dkt. 40, at 13. On these facts, a jury could find that Johnson likely will die in prison despite his eligibility for parole and thus, that he is similarly situated with inmates who

---

[4] In his response, Johnson appears to recognize that his challenge to the statutory exemption is subject to rational-basis review, but he also briefly suggests there might be "a need for a heightened standard of review." Dkt. 40, at 11-14. Because prisoners are not a suspect class, *White v. Colorado*, 157 F.3d 1226, 1234 (10th Cir. 1998), the law challenged here is subject to rational-basis review.

have actually been sentenced to serve life without the possibility of parole. *See, e.g.*, *Reedy v. Werholtz*, 660 F.3d 1270, 1275 (10th Cir. 2011) (suggesting, in context of a substantive due process claim challenging prison's mandatory-savings policy and arguably in dicta, that prisoners sentenced to "terms so long that it would be impossible for them to live long enough to serve them" were in the same category as those sentenced to life without parole); *but see Jones v. Houston*, No. 4:06CV3314, 2007 WL 3275125, at *11 (D. Neb. Nov. 2, 2007) (finding prisoner failed to state viable equal-protection claim challenging Nebraska statute that required corrections officials to withhold portion of inmate wages to be paid to the prisoner upon his or her release but provided reimbursement of withheld wages for inmates serving life sentences; reasoning that an inmate serving a term-of-years sentence is not similarly situated with an inmate serving a life sentence because the former has the potential for release and thus "has a foreseeable need for such funds").[5]

      Nonetheless, the Court agrees with Defendants that even if a jury could find that Johnson is similarly situated with inmates serving sentences of LWOP, he has not shown that the Oklahoma Legislature lacked any rational basis to distinguish between inmates serving sentences of LWOP and inmates who are serving "lengthy and unusual sentences" but are eligible for parole. "Under rational basis review, the law in question 'is accorded a strong presumption of validity.'" *United States v. Titley*, 770 F.3d 1357, 1359 (10th Cir. 2014) (quoting *Heller v. Doe*, 509 U.S. 312, 319 (1993)). As a result, the party who challenges a law on equal-protection grounds bears the burden "to negative every conceivable basis which might support it." *Id.* (quoting *Heller*, 509 U.S. at 320). And, as a general matter, "legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality." *McGowan v.*

---

[5] Nothing in the *Jones* decision suggests that the prisoner in that case was serving lengthy or consecutive sentences similar to Johnson.

*Maryland*, 366 U.S. 420, 425-26 (1961).

In practice, failing to apply the statutory exemption to Johnson, or other inmates like him who are serving lengthy term-of-years sentences, seems unfair. But lawmakers do not violate the Equal Protection Clause by failing to account for every contingency that might result in disparate treatment of similarly situated individuals. *McGowan*, 366 U.S. at 425-26. Rather, lawmakers are tasked with "ensur[ing] . . . that those who 'appear similarly situated' are not treated differently without, at the very least, 'a rational reason for the difference.'" *SECSYS, LLC v. Vigil*, 666 F.3d at 684-85 (alteration added) (quoting *Engquist v. Ore. Dep't of Agric.*, 553 U.S. 591, 602 (2008)). And, as Defendants emphasize, when rational-basis review applies, neither the logic nor the wisdom of legislative line-drawing is before the Court. Dkt. 37, at 7; *see F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993) ("Whether embodied in the Fourteenth Amendment or inferred from the Fifth, equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."). Instead, the Court's task is limited to determining whether any rational basis could support the legislative line-drawing. *Id.* Significantly, in 1985, the Oklahoma Supreme Court considered the constitutionality of the 1981 version of OKLA. STAT. tit. 57, § 549.5, which did not contain the exemption at issue here, and found that the mandatory-savings rule itself was constitutional for two reasons: first, "to prevent the free flow of currency within the prison system," and second, to "provide an inmate with sufficient funds upon his release to assist him in readjustment to society at large without further aid from the state treasury." *Cumbey v. State*, 699 P.2d 1094, 1098 (Okla. 1985). The second

12

reason supports the 2014 amendment exempting from the mandatory-savings rule only those inmates serving sentences of LWOP. Absent exceptional circumstances, those inmates will not be released from prison and thus do not need funds to assist them with readjustment to society at large.[6] Even if Johnson's prospects for release are slim, they are still better than those of an inmate sentenced to life without the possibility of parole. *See, e.g.*, *Sperry v. Werholtz*, 321 F. App'x 775, 778 (10th Cir. 2009) (unpublished) (rejecting prisoner's due-process claim challenging prison's mandatory-savings policy; reasoning that because the prisoner was "not serving a life sentence without parole" he was release-eligible and "[e]ven if his release is 'a great many years into the future,'" the prison has a legitimate interest in providing him "with a source of funds upon his release to ease his transition into society"); *Bird v. Wyo. Bd. of Parole*, 382 P.3d 56, 62-63 (Wyo. 2016) (finding, under Wyoming law, that prisoners sentenced to "a life sentence according to law" and a "life sentence without parole" are similarly situated in that neither group may be considered for parole and both may obtain release, if at all, only through commutation or pardon, but reasoning legislature had rational basis for not exempting from mandatory-savings rule inmates serving life according to law because those inmates have "better prospects for eventual release than those sentence to life without parole" and "[t]here is a legitimate state interest in providing incentive to prisoners for good behavior that would enhance the possibility of leaving the prison system before the end of their lives"). The Oklahoma Legislature's line-drawing with respect to the statutory exemption challenged here may be imperfect, but it is not irrational. Thus, Johnson has not shown

---

[6] Johnson suggests that even an inmate sentenced to serve life without the possibility of parole is not necessarily destined to die in prison because "there are always new laws [and] newly discovered evidence that has allowed several with LWOP terms having been changed or reduced." Dkt. 40, at 12. But even if there is some chance that some inmate sentenced to LWOP may have his or her sentence "changed or reduced," that merely shows that Defendants' enforcement of the statutory exemption results in "some inequality" not that the exemption fails under rational-basis review. *See McGowan*, 366 U.S. at 425-26.

13

that Defendant's enforcement of OKLA. STAT. tit. 57, § 549(A)(5) violates his right to equal protection.

D. **Conclusion**

Because Johnson has not established that the Defendants' enforcement of the statutory exemption found in OKLA. STAT. tit. 57, § 549(A)(5) violates his Fourteenth Amendment right to equal protection of the laws, Defendants are entitled to judgment as a matter of law. The Court therefore grants Defendants' motion for summary judgment.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. Defendants' motion for summary judgment (Dkt. 37) is **granted**.
2. A separate judgment shall be entered in this matter.

**DATED** this 23rd day of October 2019.

TERENCE C. KERN
United States District Judge